IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **DAVID ABRAHAM** and **OAK SHORE LLC**,<br><br>            Plaintiffs,<br><br>       v.<br><br>**BRENDAN TAK WEI KWAUK, ANDREW YU TANG KWAUK**, and **DBS BANK,**<br><br>            Defendants. | Case No. 3:24-cv-1630-SI<br><br>**ORDER** |

**Michael H. Simon, District Judge.**

In their original Complaint, Plaintiffs David Abraham ("Abraham") and Oak Shore LLC sued Defendants Brendan Tak Wei Kwauk ("Brendan") and Andrew Yu Tang Kwauk ("Andrew"), alleging conversion, unjust enrichment, and fraud. ECF 1.[1] Andrew moved to dismiss, arguing both lack of personal jurisdiction and failure to state a claim. ECF 10. In response, Plaintiffs filed a First Amended Complaint ("FAC"). ECF 13. In the FAC, Plaintiffs added DBS Bank ("DBS") as a Defendant and alleged fraudulent concealment, negligence, negligent misrepresentation, intentional misrepresentation, breach of fiduciary duty, conversion,

---

[1] The Complaint alleges that Brendan is Andrew's son. Compl. ¶¶ 2.1-2.2. Because both share the same last name, the Court refers to each Defendant by his first name. No disrespect is intended.

PAGE 1 – ORDER

and intentional infliction of emotional distress. *Id.*[2] Andrew then moved to dismiss the FAC, again arguing both lack of personal jurisdiction and failure to state a claim. For the reasons explained below, the Court grants Andrew's motion to dismiss.

## STANDARDS

In a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of proving that the court's exercise of jurisdiction is proper. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). When resolving such a motion on written materials, rather than after an evidentiary hearing, a court need "only inquire into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisdiction." *Id.* (cleaned up). Although a plaintiff may not rest solely on "the bare allegations of its complaint, uncontroverted allegations in the complaint must be taken as true." *Id.* (citation omitted). In addition, conflicts between the parties over statements in affidavits must be resolved in the plaintiff's favor. *Id.*

## BACKGROUND

Abraham is a resident of Oregon and is the only member of Oak Shore, a limited liability corporation registered in Oregon. FAC ¶¶ 1-2. Brendan and Andrew are residents of Singapore. *Id.* ¶¶ 3-4. Andrew is an executive at DBS and, as noted, is Brendan's father. *Id.* ¶ 4. DBS is a bank organized and existing under the laws of Singapore. *Id.* ¶ 5.

In November 2021, Plaintiffs allege that Abraham wired a total of $287,848.94 to a DBS account in Singapore that was under Brendan's custody and control. *Id.* ¶ 11. Plaintiffs assert that Abraham and Brendan had an understanding that the funds were not to be moved from that

---

[2] DBS has not yet entered an appearance in this lawsuit.

account without Abraham's consent. *Id.* ¶ 12. On November 10, 2022, Brendan allegedly wired $10,150 to Abraham to meet a required minimum IRA distribution payment. *Id.* ¶ 13.

Plaintiffs further allege that on or about March 8, 2023, Abraham communicated with Brendan online and demanded an accounting of Abraham's funds. *Id.* ¶ 15. Plaintiffs assert that Abraham and Brendan planned a video call for March 10, 2023, but Brendan did not appear for that call. *Id.* On March 30, 2023, Brendan allegedly told Abraham that Abraham's money was gone; immediately thereafter, Abraham's access to the account at DBS was removed. *Id.* ¶ 16.

Plaintiffs allege that Andrew had previously opened a bank account for Brendan, which led Brendan to establish other accounts, including the account in which Brendan held Abraham's funds. *Id.* ¶ 39(e). Plaintiffs contend that Andrew and DBS Bank did not monitor the account in which Abraham's funds were held, and that Andrew hired counsel for Brendan upon learning of the controversy between Brendan and Abraham. *Id.* ¶¶ 39(e), (f). Plaintiffs assert that Andrew and Brendan worked together to perpetuate a fraudulent scheme to use Abraham's money. *See, e.g.*, *id.* ¶¶ 44, 58(v).

## DISCUSSION

### A. Applicable Law

Unless a federal statute governs personal jurisdiction, a district court applies the law of the forum state. *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008). Oregon's long-arm statute is co-extensive with constitutional standards. *Gray & Co. v. Firstenberg Mach. Co.*, 913 F.2d 758, 760 (9th Cir. 1990) (citing Or. R. Civ. P. 4L; *Oregon ex rel. Hydraulic Servocontrols Corp. v. Dale*, 294 Or. 381, 384 (1982). Thus, the Court need only determine whether its exercise of personal jurisdiction over a defendant would offend constitutional due process requirements. *See Boschetto*, 539 F.3d at 1015; *Hydraulic Servocontrols*, 294 Or. at 384.

Due process requires that the defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quotation marks omitted). The Supreme Court has rejected the application of "mechanical" tests to determine personal jurisdiction. *Id*. at 319; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985). Rather, a court should consider the "quality and nature of the activity in relation to the fair and orderly administration of the laws which it was the purpose of the due process clause to insure." *Int'l Shoe*, 326 U.S. at 319.

"There are two forms of personal jurisdiction that a forum state may exercise over a nonresident defendant—general jurisdiction and specific jurisdiction." *Boschetto*, 539 F.3d at 1016. A court has general personal jurisdiction over a defendant whose contacts with the forum are "continuous and systematic" even if those contacts are wholly unrelated to the plaintiff's claims. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). If the court lacks general personal jurisdiction, it may have specific personal jurisdiction if the defendant has certain minimum contacts with the forum state, the controversy arose out of those contacts, and the exercise of jurisdiction is reasonable. *See Burger King*, 471 U.S. at 472-77. "The inquiry whether a forum State may assert specific jurisdiction over a nonresident defendant 'focuses on the relationship among the defendant, the forum, and the litigation.'" *Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064, 1068 (9th Cir. 2017) (quoting *Walden v. Fiore*, 571 U.S. 277, 283-84 (2014)). This means that "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State." *Walden*, 571 U.S. at 284 (emphasis in original) (quoting *Burger King*, 471 U.S. at 475). The analysis also must look the defendant's contacts with the forum state, and not with persons who reside there. *Id.* at 285.

The Ninth Circuit applies a three-part test, commonly referred to as the "minimum contacts test," to determine if the exercise of specific jurisdiction over a nonresident defendant is appropriate:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, *i.e.*, it must be reasonable.

*Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 603 (9th Cir. 2018) (quoting *Schwarzenegger*, 374 F.3d at 802). The plaintiff bears the burden of satisfying the first two prongs. *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). If a plaintiff does that, the burden of satisfying the third prong then shifts to the defendant to present a "'compelling case' that the exercise of jurisdiction would not be reasonable." *Boschetto*, 539 F.3d at 1016 (quoting *Schwarzenegger*, 374 F.3d at 802). "Generally, '[t]he commission of an intentional tort in a state is a purposeful act that will satisfy the first two requirements [of the minimum contacts test].'" *Freestream Aircraft*, 905 F.3d at 603 (alterations in original) (quoting *Paccar Int'l, Inc. v. Com. Bank of Kuwait, S.A.K.*, 757 F.2d 1058, 1064 (9th Cir. 1985)).

The first prong embodies two distinct, although sometimes conflated, concepts: purposeful availment and purposeful direction. *See Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010); *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1155 (9th Cir. 2006). The purposeful direction test, often called the "effects" test, derives from *Calder v. Jones*, 465 U.S. 783 (1984). "A purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used

in suits sounding in tort." *Schwarzenegger*, 374 F.3d at 802 (citations omitted). The key, however, is where the allegedly wrongful conduct took place. *Freestream Aircraft*, 905 F.3d at 604-06. For tortious conduct that takes place within the forum state, the purposeful availment test under *Paccar* is appropriate, while the purposeful direction analysis is appropriate for tortious conduct that takes place outside the forum state but has an effect within the forum state. *Id.* ("Read together, those statements comparing within-forum-state versus out-of-forum-state conduct, and contract versus tort actions, suggest that a purposeful direction analysis naturally applies in suits sounding in tort where the tort was committed outside the forum state. . . . This review of the history of the effects doctrine and its place in our jurisprudence makes clear that *Paccar*, not *Calder*, is the proper starting place where an intentional tort is committed within the forum state. *Paccar* was rooted in the well-settled understanding that the commission of a tort within the forum state usually supports the exercise of personal jurisdiction. . . . The effects doctrine, on the other hand, makes more sense when dealing with out-of-forum tortfeasors."). Because Plaintiffs' claims sound in tort, the Court applies the purposeful direction analysis.

**B.  Analysis**

Andrew argues that the Court does not have general personal jurisdiction over him because he is a resident and citizen of Singapore and is not "essentially at home" in Oregon. Plaintiffs do not dispute this. The Court agrees that it lacks general jurisdiction over Andrew because he has no continuous and systematic contacts with Oregon. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021).

The Court turns next to the issue of specific personal jurisdiction. Under the three-part effects test, for purposeful direction "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Yahoo! Inc. v. La Ligue Contre Le Racisme Et*

*L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (cleaned up). Andrew argues that Plaintiffs fail to allege that Andrew committed *any* intentional act directed at Oregon, including one related to Plaintiffs' claims. Plaintiffs concede that "Andrew did not have a direct connection to the transaction concerning Brendan," but argue that Andrew "interposed" himself into the matter by making a settlement offer to Plaintiffs during negotiations that occurred before this lawsuit was filed. Accordingly, Plaintiffs contend that all claims against Brendan are "inured to Andrew" under the doctrine of vicarious liability. ECF 19 at 9.

The Court agrees that Plaintiffs have failed to allege that Andrew expressly aimed at Oregon any intentional and wrongful act related to Plaintiffs' claims. Plaintiffs' conclusory allegations that Andrew acted "in concert" with Brendan and DBS Bank are insufficient to establish a prima facie showing of personal jurisdiction. *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007) ("[M]ere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden."). Plaintiffs allege only that Andrew engaged in settlement negotiations with Plaintiffs. Even if these settlement offers are intentional acts aimed at Oregon, Plaintiffs' claims do not arise out of the settlement offers. The settlement offers occurred after the allegedly wrongful transactions that caused Plaintiffs' harm. Thus, Plaintiffs' claims do not arise out of Andrew's contacts with Oregon.

Regarding Plaintiffs' conclusory assertion of vicarious liability, Plaintiffs argue that Andrew acted as Brendan's agent, at least regarding the making of settlement offers. "Because agents do not exercise control over principals, Plaintiffs' agency theory of specific personal jurisdiction fails." *Zhang v. Voice of Guo Media Inc.*, 2022 WL 20846203, at *5 (D. Ariz. July 6, 2022) (citing *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017)). Further, Plaintiffs have not alleged any facts showing that Brendan was acting on Andrew's behalf. Thus,

Plaintiffs have not sufficiently alleged that the Court has personal jurisdiction over Andrew. Because the Court concludes that it lacks personal jurisdiction over Andrew, it declines to consider Andrew's alternative argument that Plaintiffs have failed to state a claim against him.

## CONCLUSION

The Court GRANTS Defendant Andrew Yu Tang Kwauk's motion to dismiss for lack of jurisdiction. ECF 15.

**IT IS SO ORDERED.**

DATED this 28th day of April, 2025.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge